UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CAMILLE B.[1],

      Plaintiff,

v.                            Civil Action No. 2:20cv262

KILOLO KIJAKAZI,[2]
*Acting Commissioner of*
*Social Security,*

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Camille B. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability insurance benefits ("DIB"). Specifically, Plaintiff claims that the Administrative Law Judge ("ALJ") improperly relied on vocational expert testimony that she could perform past relevant work, failed to accommodate her mental impairments, and improperly considered her claim on remand despite a defect in her original appointment. This action was referred to the undersigned United

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure.

After reviewing the parties' briefs and the administrative record of the Commissioner's findings, this Report concludes that the ALJ properly assessed the VE testimony and otherwise complied with the law and regulations governing disability benefits under the Social Security Act. Accordingly, for the reasons stated in detail below, this report recommends that the court AFFIRM the final decision of the Commissioner by GRANTING the Commissioner's Motion for Summary Judgment (ECF No. 15) and DENYING Plaintiff' Motion for Summary Judgment (ECF No. 13).

## I.  PROCEDURAL BACKGROUND

On September 23, 2015, Plaintiff filed an application for DIB. (R. 132, 274-75). She alleged that she was disabled as of June 1, 2014, due to glaucoma, arthritis, dry eye disease, migraines, degenerative disc disease, spinal surgery and rotator cuff tear. (R. 106-07, 320). The state agency denied her application initially and again upon reconsideration. (R. 151, 163). Plaintiff then requested an administrative hearing, which was first conducted January 9, 2018. (R. 66-105).

The ALJ denied Plaintiff's claims for DIB, finding she was not disabled during the period alleged. (R. 129-144). In her first administrative appeal, the Appeals Council granted

Plaintiff's request for review, vacated the decision and remanded for further review. (R. 145-48). The Appeals Council concluded that the ALJ's decision regarding transferable skills was not supported by the record. The Council remanded the case, directing the ALJ to take additional vocational evidence and make new findings regarding transferable skills and jobs available to Plaintiff in the national economy. (R. 146-47). On March 28, 2019, the same ALJ held a second hearing and received new evidence – specifically new testimony by Plaintiff and a new opinion from a different vocational expert (VE). (R. 31-58). Again, the ALJ found Plaintiff not disabled. This time the ALJ concluded Plaintiff retained the ability to perform her past relevant work as a museum director. (R. 15-25). The Appeals Council denied review, thus making the ALJ's second decision a final decision of the Commissioner. (R. 1-3). Plaintiff then filed the Complaint in the present action seeking review of the administrative proceedings. Compl. (ECF No. 1).

In this court, Plaintiff argues remand is required because the ALJ failed to resolve conflicts in the VE testimony given at the two hearings. She claims the ALJ's decision to classify her past relevant work at the medium exertional level after the first hearing in 2018 precludes her later determination that the work was performed at the light exertional level. She also argues the ALJ did not accommodate mental limitations she found credible with

3

appropriate restrictions in the RFC.  Finally, she argues the ALJ's second hearing was tainted by a constitutional defect in her appointment during the first hearing and thus, the case should be remanded for another hearing by an ALJ whose appointment was not subject to question.  The Commissioner disagrees with each of these points, arguing that the ALJ's decision is supported by substantial evidence, and untainted by any constitutional challenge to her appointment.  After a review of the record, this report considers each of these arguments.

## II.  FACTUAL BACKGROUND

Plaintiff was born on April 28, 1962, and was fifty-two at the time of her alleged onset, and fifty-seven at the time of the ALJ's decision.  (R. 274).  She completed high school and has two Associate Degrees, one in mechanical drafting and design, and one in education.  She worked for several years as an assistant museum director at a historic church.  See (R. 35-37).

Plaintiff's arguments in this court do not require a lengthy review of her medical history, which is not extensive in any event.  She alleged disability based on glaucoma, arthritis, chronic dry eye syndrome, degenerative disc disease, migraines, spinal surgery, and a rotator cuff tear.  (R. 106-07, 320).  She had back surgery in April 2014 as a result of a spinal cyst which had ruptured.  (R. 417).  Her surgery involved a lumbar fusion to also address degenerative spondylolisthesis.  Id.  During a follow-up·

4

visit the following year, her doctor observed that she had a slower than expected recovery but at the time was "doing quite well," using only Tylenol for pain and had pain only upon over exertion. (R. 446). Her gait during that visit was normal and pain free and her surgeon saw no need for further intervention, directing her to follow-up "on an as needed basis should new problems arise." Id.

In September 2014, Plaintiff also had an orthoscopic repair of her rotator cuff to address chronic left shoulder pain which had been unresponsive to conservative therapy. (R. 407). By December of that year, at a post-operative visit, she reported doing well, with her pain at a two on a ten-point scale. (R. 401).

In March 2015, Plaintiff was seen by her primary care physician, Dr. David Belvin. She stated that she was "doing better since back surgery" and becoming more active. (R. 481-82). She denied recent panic attacks and reported to doing well on her present medications. (R. 482). In September 2015, Plaintiff returned to Dr. Belvin reporting that she was still doing well on her medication. She denied any mood swings, anxiety, depression, weight loss or sleep disturbance. (R. 479-80). In a November 2015 visit with Dr. Belvin, Plaintiff reported increased irritability since her medication was reduced. She had brought a disability form to complete based on her low back pain, but he advised her to present it to the neurologist since he had not

treated her back condition. (R. 1156). The record does not contain any opinion evidence from Plaintiff's treating providers.

In December 2016, Plaintiff presented with complaints of low back pain after a 400-mile car trip. (R. 1049). X-rays ordered thereafter were unremarkable and showed no change in the hardware placement following her surgery. (R. 1049). Medications in that month brought complete pain relief for her low back and she reported only "mild stiffness" following a plane trip to Pittsburg. Id.. At that time, Plaintiff reported exercising three times per week. (R. 1050).

Between March 2016 and October 2017, Plaintiff regularly consulted with Virginia Eye Consultants regarding complaints of dry eye and redness. (R. 1219-72). Although she occasionally complained of blurry vision, her most common complaints were redness and irritation. She was treated with various medications. During her last visit her visual acuity in both eyes was 20/20. (R. 1222-23).

In addition to her treating physicians, the record before the ALJ included evidence from state agency providers who reviewed the record and opined on Plaintiff's condition. State agency psychologist Alan D. Entin, Ph.D. reviewed the record in March 2016 and concluded Plaintiff had no limitation in her activities of daily living or social functioning, only mild limitations in concentration, persistence, and pace, and no episodes of

decompensation.  (R. 111).  He concluded that the evidence did not substantiate any severe medically determinable psychiatric impairment.  (R. 110-11).  Also in March 2016, state agency physician Richard Surrusco reviewed the medical record and completed an RFC assessment.  He concluded that Plaintiff had the ability to perform light work with limited pushing and pulling with the left upper extremity; occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; occasional stooping; and frequent kneeling, crouching, and crawling.  He imposed other postural limits, but no manipulative, visual, communicative, or environmental limitations.  (R. 112-14).  At the reconsideration level, Plaintiff's records were also examined by Eric Oritt, Ph.D., another state agency psychologist who agreed with Dr. Entin's findings that Plaintiff did not have a severe mental impairment and found Plaintiff's mental conditions were controlled with medication prescribed by a primary care physician.  (R. 123). Similarly, Dr. Luc Vinh completed his own RFC assessment reporting exertional limitations similar to Dr. Surrusco's.  (R. 124-25). Dr. Vinh also concluded that Plaintiff's dry eye syndrome sometimes caused pain and halos driving at night but did not impair her visual acuity.  (R. 125).

a.  Testimony Before the Administrative Law Judge.

Plaintiff testified before the ALJ at both her 2018 and 2019 hearings.  In March 2019, she described in detail her past work

history at the church museum which included supervising docents, training employees, managing the museum store, writing grants and reports, preparing educational programs, and managing the website. (R. 36-37). She also coordinated necessary repairs to the church buildings, wrote to donors, and generally managed technology in the office. (R. 36-41). She stated that during inventory for the museum store she would occasionally lift boxes weighing twenty pounds, but not fifty pounds.[3] (R. 37-38).

With respect to her limitations, Plaintiff described her back surgery which she characterized as "harder … than was suspected," but stated that since 2016 she was off powerful pain killers and only taking Tylenol for pain. (R. 42-43). She also took gabapentin for muscle spasm, but she had not seen her neurologist in approximately four years. She consulted with her general practitioner every six months. (R. 44-45).

When asked what was keeping her from working, Plaintiff said her eyes and her back. She said her eyes became dry, itchy, burning and sometimes blurry and painful. She used Tylenol and warm compresses for the pain. (R. 46-47). With respect to her activities, Plaintiff testified that she could drive, but that her eyes tired after 20-30 minutes and she would have to rest.

---

[3] Plaintiff's testimony differed from her written work history in which Plaintiff indicated the heaviest weight she may sometimes have to lift was fifty pounds. (R. 329).

8

Likewise, she was able to read on a computer, her phone, and in print. She described her leisure activities, including reading, managing her bird feeders, and engaging in various art projects. (R. 47-50). At the 2018 hearing before the ALJ, Plaintiff reported driving three times a week, making breakfast daily, reading the news online, and performing household chores. She also cooked and gardened. (R. 72, 88, 93-94). During the 2018 hearing she reported she was trying to learn to become a photographer, doing fine art painting, and had taken classes across from her house. (R. 89).

b.   Testimony from the Vocational Expert.

In addition to Plaintiff's testimony, the ALJ examined a vocational expert ("VE") during the 2019 hearing. (R. 53). That expert, Barbara Byers, first characterized the nature of Plaintiff's work, stating that it falls "most closely under museum director." Id. She described it as sedentary physical demand level, skilled work with an SVP of 8. Id. Although she thought the work was ordinarily classified as sedentary, during the hearing, the VE testified that, as described by Plaintiff, it would probably fall into the light category. (R. 54).

The ALJ then asked the VE to assume a hypothetical individual with the past work described who was capable of light exertion, lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently, standing or walking approximately six

hours per eight-hour work day, and sitting approximately six hours per eight-hour work day with normal breaks, as well as other postural limitations which he eventually included in the RFC. Specifically excluded were any jobs driving motor vehicles such as forklifts, trucks, or automobiles. He then asked whether such hypothetical individual could perform Plaintiff's past relevant work and the VE answered, "Yes." She further asked whether the work could be performed as actually or generally performed and the VE answered, "Both." (R. 55). She also asked whether at the light RFC level there were other jobs the individual could perform and the VE identified rental clerk (DOT Code 295.467-014); mail sorter (DOT Code 209.687-026); and folding machine operator (DOT Code 208.685-14). (R. 56).

### III. <u>STANDARD OF REVIEW</u>

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)). It consists of "more than

a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.   ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits, and be under a "disability" as defined in the Act.   42 U.S.C. §§

416(i), 423.   The Social Security Regulations define "disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).   To meet this definition, a claimant must have a "severe impairment" that makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.   20 C.F.R. § 404.1505(a); see also 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability.   The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled.   The five questions which the ALJ must answer are:

(1)  Is the individual involved in substantial gainful activity?

(2)  Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

(3)  Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

(4)   Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

(5)   Does the individual's impairment or impairments prevent him or her from doing any other work?

20 C.F.R. § 1520(a)(4).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability.   An affirmative answer to question three or five establishes disability.  See 20 C.F.R. §§ 404.1520, 416.920.  The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Lewis v. Berryhill, 858 F.3d 585, 861 (4th Cir. 2017) (citing Monroe v. Colvin, 826 F.3d 176, 179-80 (4th Cir. 2016)).   When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age.  Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)).  At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

In this case, after conducting the foregoing analysis, the ALJ concluded that Plaintiff met the insured status requirements

from her alleged disability onset date through December 31, 2019. See (R. 17). Ultimately, however, the ALJ concluded she had not been under a disability from that date through the date of the hearing. See (R. 25).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date to the date of the hearing. (R. 17). At step two, the ALJ found that Plaintiff suffered from severe impairments of degenerative disc disease, obesity, dry eye syndrome, glaucoma and left rotator cuff repair. Id. (citing 20 C.F.R. §§ 404.1520(c). At step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. 19). The ALJ also developed a finding regarding Plaintiff's residual functional capacity ("RFC"). She determined she had numerous limitations, including the limitation that she was able

> [T]o perform light work as defined in 20 C.F.R.
> § 404.1567(b), except: The claimant is limited to
> lifting, carrying, pushing, and pulling 20 pounds
> occasionally and 10 pounds frequently. She is limited
> to standing and/or walking 6 hours per 8-hour work day
> and sitting approximately 6 hours per 8-hour work day,
> with normal breaks.

(R. 20-21). The RFC included a number of other postural and environmental limitations, but did state that Plaintiff was "capable of frequent near acuity." (R. 21). At step four, the

ALJ found that Plaintiff had past relevant work as a museum director which she could still perform despite limitations resulting from her severe impairments. (R. 24). Consequently, the ALJ determined Plaintiff did not have a qualifying disability during the relevant period and denied her claim for DIB. (R. 25).

a.   The ALJ Properly Relied on VE Testimony from the Second Hearing in 2019 to Conclude Plaintiff was Capable of Performing her Past Relevant Work.

Plaintiff first argues the ALJ erred by failing to resolve conflicting vocational evidence regarding then nature of her past relevant work. At the first hearing, conducted in 2018, a different vocational expert characterized Plaintiff's past relevant work as a museum director at the medium exertional level. (R. 96). The same VE also testified in 2018 that Plaintiff's past work, as she described it, was "a composite of three different DOT occupations." Id. He characterized those three as museum attendant, assistant manager, and grant writer. Id. After the Appeals Council vacated the ALJ's first decision and remanded for additional evidence, a second hearing was held where Plaintiff described her employment for a second VE. That VE, Barbara Byers, testified that her past relevant - as generally performed - was sedentary, but performed by Plaintiff at the light exertional level. (R. 53-54). The second VE, Ms. Byers, also disagreed that the past position was a composite job. She testified that the job

15

described by the Plaintiff was "most closely under museum director" with a DOT code of 102.117-014.  (R. 53).

Plaintiff argues that the ALJ improperly adopted the latter testimony without addressing the original VE's different conclusions.  But as the Commissioner points out, the original ALJ decision was vacated, rendering it a nullity.  Once the case was remanded to the ALJ "to gather more information about the extent of [claimant's] disability, the ALJ was free to reevaluate the facts." Houston v. Sullivan, 895 F.2d 1012, 1015 (5th Cir. 1989). A contrary rule would discourage ALJs "from reviewing the record on remand, checking initial findings of fact, and making corrections if appropriate."  Campbell v. Bowen, 822 F.2d 1518, 1522 (10th Cir. 1987).  Thus, neither the SSA Rules nor the law of the Fourth Circuit required the ALJ to distinguish the superseded testimony of the previous VE.

In a nearly identical case to this one, the District of Arizona considered whether the ALJ had to resolve a conflict between the testimony of a vocational expert from his first hearing and the testimony of the vocational expert at the second hearing regarding his past relevant work as a claims processor.  Johnson v. Comm'r, No. cv19-1273, 2019 WL 6888252, at *5 (D. Ariz. Dec. 18, 2019).  As here, the Plaintiff's "challenge simply boils down to whether the ALJ properly relied on the second vocational expert's testimony."  Id.  And, as here, Plaintiff in Johnson

failed to cite "any legal authority that indicates the ALJ erred in basing his decision on the second vocational expert's testimony without resolving the contradiction . . . allege[d]." Id. at *6. After observing that the vacated decision was rendered a nullity, with no legal effect whatsoever, the district court stated, "it would be anomalous that an ALJ would be required to resolve inconsistency between the first hearing that was voided and the new hearing, which occurred because the first hearing and decision was voided." Id. (emphasis in original). Thus, there is no requirement that an ALJ resolve inconsistencies in superseded testimony from a prior hearing after remand. Id. (citing Curtis v. Colvin, No. 3:15cv225, 2016 WL 1056682, at *18 (N.D. Tex. Feb. 26, 2016), report and recommendation adopted, No. 3:15cv225, 2016 WL 1047105 (N.D. Tex. Mar. 15, 2016)).

Plaintiff fails to materially distinguish Johnson or Curtis and cites no authority to support the proposition that the VE's prior testimony was somehow binding. Instead, Plaintiff argues that by accepting the new VE's testimony on her past relevant work, the ALJ was engaging in "cherry picking" the record by ignoring contrary evidence. Pl.'s Mem. (ECF No. 14, at 4-5) (citing cases). But those cases do not address the issue present here, where a new hearing was scheduled, and new testimony taken precisely because of an error in the first hearing. Here, the Appeals Council's remand order specifically directed the ALJ to "[o]btain

supplemental evidence from a vocational expert." (R. 147). And the supplemental evidence obtained included additional detailed testimony from the Plaintiff regarding her work performance, as well as another expert opinion by a different vocational expert.

For the same reasons, Plaintiff's alternative argument that the ALJ could not rely on the VE's additional conclusion that Plaintiff could perform her past relevant work as generally performs also fails. This argument is also premised on the ALJ's alleged failure to reconcile the two VEs' testimonies. See Pl.'s Mem. (ECF No. 14, at 6-8). The first VE testified that Plaintiff's past work as an "assistant museum director" was a composite job, with elements of grant writer, assistant manager, and museum attendant. (R. 96). If it is was a composite job, then the rules prohibit the ALJ from relying on a finding that her RFC would permit her to perform the job as generally performed. See POMS DI 25005.020(b); SSR 13-2p, 2013 WL 621536, at *15.

But Ms. Byers, the VE on whom the ALJ relied, testified clearly that Plaintiff's position was most accurately reflected in the DOT as "museum director." (R. 54). Indeed, the ALJ specifically drew the VE's attention to the prior VE's testimony and clarified that he wanted Ms. Byers' own opinion, based on Plaintiff's testimony at the 2019 hearing. During her examination of Plaintiff in 2019, with the VE present, the ALJ turned to the VE and said, "[D]o you want to know what the prior VE found?" The

Ms. Byers responded, "Sure." And the ALJ stated, "The prior VE found it was a composite of three occupations, one of museum attendant which is light, semi-skilled. Assistant manager which is light, skilled with an SVP of 6. And a grants writer which is - SVP of 8, and sedentary. But I don't know if that's how you would classify it." (R. 38). Later, after Plaintiff's testimony describing her employment was concluded, the ALJ asked for the VE's opinion on its classification and she stated, "The work as described here falls most closely under museum director, although I know she was the assistant director. That's DOT code 102.117-014." (R. 53). In follow up questioning, the ALJ confirmed that this position (museum director) would include all the duties formerly addressed in the first VE's opinion. (R. 54) (confirming museum director, encompassed grant writing, supervision, and "everything" described in Plaintiff's testimony). Thus, although she was not required to do so, the ALJ elicited the clarity Plaintiff claims was missing from her finding that Plaintiff could perform her past relevant work as generally performed. Unlike the first VE, the second VE testified that Plaintiff's job was reflected in the DOT and that Plaintiff was able to perform the job as generally performed. The ALJ properly relied on this testimony. Accordingly, the ALJ's conclusion that Plaintiff could perform past relevant work - both as she performed it, and as generally performed - is supported by substantial evidence.

b.  <u>The ALJ Properly Evaluated Mild Limitations Resulting from
Plaintiff's Non-severe Mental Impairments.</u>

Plaintiff next argues the ALJ erred by failing to account for
mild limitations in understanding, remembering, and applying
information, and in concentration, persistence, and pace resulting
from her non-severe mental impairments.  Because the RFC contains
no restrictions directed to these alleged limitations, she argues
that remand is required.  Pl.'s Mem. (ECF No. 14, at 8-11).  I
disagree.

Importantly, Plaintiff does not contend that her mental
impairments were severe, nor that they imposed any greater than
the mild limitations found by the ALJ during her application of
the paragraph (B) criteria at step three.  In so finding, the ALJ
accorded "great weight" to both state agency opinions (the only
opinion evidence on mental limitations in the record).  Both
reviewing psychologists found Plaintiff's impairments were not
severe and warranted no work-related mental limitations.  (R. 19,
111, 123).

When impairments are non-severe, by definition they do not
significantly limit a claimant's ability to do basic work
activities.  20 C.F.R. § 404.1522(a).  As a result, there is no
requirement under SSA Rules to include specific RFC restrictions
directed to mild limitations associated with these non-severe
impairments.  Plaintiff's argument seeks to extend the Fourth

Circuit's holding in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). But the Fourth Circuit has held that Mascio creates no per se rules. Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020). Nor has the rule in Mascio been extended to cases involving only mild mental limitations. Younger v. Berryhill, No. 2:18cv182, 2019 WL 3432771, at *5 (E.D. Va. June 21, 2019), adopted by 2019 WL 3451305 (E.D. Va. July 29, 2019) (finding no error in RFC's analysis of claimant's mild limitation in concentration, persistence, or pace); Suttles v. Colvin, 543 Fed. App'x 824, 826 (10th Cir. 2013) (no error when ALJ did not include a mental limitation in the RFC despite mild limitations in concentration, persistence, or pace).

Moreover, the ALJ's analysis did not ignore Plaintiff's mild mental limitations. She discussed the paragraph B criteria when assessing the severity of mental impairments as required at step three, noting that Plaintiff suffered "significant psychological stress" after losing her job in 2014. But she also observed that by 2015, she was "doing very well," had suffered no panic attacks, and was "exploring her artistic side." (R. 19). Her later medical records indicated her mood swings responded well to prescribed medication. Id. As a result of her detailed assessment, the ALJ concluded the medical records supported only limitations related to the physical impairments. (R. 23). Because these limitations

adequately account for the impairments, the ALJ's RFC findings are supported by substantial evidence.

c.   The ALJ Who Decided Plaintiff's Case Was Constitutionally Appointed.

Plaintiff's last argument for remand challenges the ability of the ALJ to decide Plaintiff's claim and is rooted in recent Supreme Court precedent, Lucia v. SEC, 138 S.Ct. 2044 (2018).  In Lucia, the Supreme Court held that ALJs employed by the Securities and Exchange Commission were inferior officers of the United States subject to the Appointments Clause.  That clause specifies "the permissible methods of appointing 'officers of the United States,' a class of government officials distinct from mere employees." Lucia, 138 S.Ct. at 2049.  Specifically, it requires such officers be appointed by the President, a court of law, or head of department.  Jones Bros. v. Sec'y of Labor, 898 F.3d 669, 676 (6th Cir. 2018) (citing U.S. Const. Art. II, § 2, cl. 2).  Because the SEC ALJ was not a mere employee of the agency, but an officer whose appointment required action by the President, a court of law, or a department head, his appointment was defective and his action imposing the sanction under appeal was a nullity.  Following Lucia, many Social Security claimants raised similar challenges to the appointment of ALJs adjudicating their claims.  And earlier this year the Supreme Court held such claims could proceed in federal court even if claimants had not raised any objection to the

appointment during administrative proceedings.   Carr v. Saul, 141 S.Ct. 1352 (2021).

Here, however, there is no dispute that by 2019 when she wrote the opinion challenged in this court, the ALJ's appointment had been confirmed by the Acting Director of the SSA.   See SSR 19-1(p), 2019 WL 13248666 (describing Acting Commissioner's ratification of ALJ appointments on July 16, 2019).   Plaintiff does not challenge the constitutionality of that appointment. Rather, in the novel Lucia claim presented here, Plaintiff asserts that the ALJ who decided her case was barred from doing so because the ALJ initially heard the case prior to ratification of her appointment.   Plaintiff argues that Lucia requires a different ALJ after remand, Pl.'s Mem. (ECF No. 14, at 11-12), and therefore the ALJ's second opinion in this case is invalid as impermissibly tainted by the defect in her appointment when she decided the first one.   cf. Lucia, 138 S. Ct. at 2055 (directing that on remand after successful appointments clause challenge case should be decided by a different ALJ).

Since the original briefing in the case, the Supreme Court decided Carr v. Saul, 141 S.Ct. 1352 (2021), which held that SSA claimants are not required to raise Appointments Clause challenges during administrative proceedings to preserve the issue in this court.   141 S.Ct. at 1356.   Because Carr was decided after briefing, the court directed supplemental briefs on whether Carr

applied any way to Plaintiff's argument here.  See Order (ECF No. 18).  Having reviewed that briefing, I conclude that it does not. Nevertheless, the argument that Lucia's remand remedy applies in this instance requires closer scrutiny.

Lucia does specify that on remand after a successful Appointments Clause challenge, the new hearing should be before a different, constitutionally appointed officer.  Lucia, 138 S.Ct. at 2055.  The court observed, having heard the case initially, the originally appointed ALJ was not "expected to consider the matter as though he had not adjudicated it before."  Id.  In a footnote responding to Justice Breyer, who dissented from this portion of the opinion, the court also noted that it was not holding that remand must always be before a different ALJ.  Its remedy – the Court noted – was intended to create incentives to raise Appointment Clause challenges.  Id. Fn. 6 (citing Ryder v. United States, 515 U.S. 177, 183 (1995)).  The court also observed that due to the technical nature of the remand, which did not address the merits of the original decision, the previous official might be especially likely to the reach the same conclusions on the merits.  Id.

In this case, however, the remand in question did not occur after a successful Appointments Clause challenge. Instead, the first opinion – which allegedly results in the unconstitutional taint – was vacated because of a specific evidentiary defect

explained in the Appeals Council's remand order. (R. 146-47). That alleged defect was comprehensively addressed in a second hearing with new evidence directed to the alleged error. And the only decision under review in this court was made by the properly appointed ALJ who considered that evidence. Therefore, the concern animating the Supreme Court's remand order in Lucia is not present. There is no concern that the ALJ could not consider the evidence on remand because the error which prompted remand had nothing to do with her appointment. Instead, her second look at the case was exactly the kind of work trial judges routinely engage in to address errors as directed by appellate review. Because only one decision is under review, and that decision was rendered by a constitutionally appointed ALJ, the fact that the same ALJ had rendered an earlier decision, which is not subject to review in this court, does not constitutionally taint the later opinion.

### V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 15), DENY Plaintiff's Motion for Summary Judgment (ECF No. 13), and AFFIRM the Commissioner's finding of no disability.

### VI. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.    A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
July 16, 2021